Loan Number ▮

# NOTE

| JULY 17, 2020 | WASHINGTON | , D.C. |
|---|---|---|
| [Date] | [City] | [State] |

**208 FARRAGUT ST NW APT 205, WASHINGTON, D.C. 20011-4133**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $147,250.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CALIBER HOME LOANS, INC.**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.875%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

   **(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **SEPTEMBER 1, 2020**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **AUGUST 1, 2050**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 650856, DALLAS, TX 75265-0856** or at a different place if required by the Note Holder.

   **(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$692.42**.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3200 1/01   *Page 2 of 3*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____/s/ Ashley Haskett_____ (Seal)
Borrower - ASHLEY HASKETT

*[Sign Original Only]*

Loan Originator Organization: **CALIBER HOME LOANS, INC.**
NMLS ID: **15622**
Loan Originator: **RICH GODBOUT**
NMLS ID: **482307**

Pay to the order of:
_____
Without Recourse
Caliber Home Loans, Inc.
_____
/s/ Shawna McLemore
Shawna McLemore
Vice President, Post Closing

**MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01**    *Page 3 of 3*

EJF Case No.: ▮
Loan No.: ▮

# LOAN SECURITY AGREEMENT
(Cooperative Unit Loan)

THIS SECURITY AGREEMENT, made this July 17, 2020, between Ashley Nicole Haskett residing at 208 Farragut Street, NW Unit F-205, Washington, DC 20011 (the "Borrower") and Caliber Home Loans, Inc., with a mailing address of 3701 Regent Blvd., Ste. 200, Irving, TX 75063, (the "Secured Party")

In return for the Cooperative Unit Loan granted by the Secured Party to the Borrower and the mutual promises contained in this Security Agreement, it is represented, promised and agreed as follows:

## 1. REPRESENTATIONS OF THE BORROWER

The Borrower represents and promises as follows:

(A) Borrower has purchased or is about to purchase shares of capital or a membership certificate stock of that cooperative housing corporation known as Square 3324, Hampshire Gardens Apartments, Inc. (the "Corporation") and the proprietary lease, occupancy agreement, ownership contract or other such evidence of ownership appurtenant thereto and dated July 17, 2020 and all supplements thereto together or any one of which evidence the Borrower's ownership interest (the "Proprietary Documents") allocated to Unit F-205 (the "Unit") in the Corporation's building located at 208 Farragut Street, NW Unit F-205, Washington, DC 20011.

(B) Borrower has executed a note (the "Note") to the Secured Party on the above date agreeing and promising to pay to the Secured Party the principal amount of **One Hundred Forty-Seven Thousand Two Hundred Fifty And No/100 ($147,250.00)**, together with increases to the principal, if any, and interest, pursuant to the terms of the Note.

(C) The Note, this Security Agreement and the Proprietary Documents referred to in this Security Agreement as the "Agreements".

## 2. CREATION OF SECURITY INTEREST

The Borrower hereby grants to the Secured Party a continuing purchase money security interest in and to all right, title and interest of the Borrower in the "Collateral" (as defined below), to secure performance of each and every promise, covenant, obligation, liability and indebtedness of the Borrower under and in connection with the Agreements. This means that, among other things, the Secured Party may sell or transfer the Borrower's rights in the Collateral and apply the proceeds to satisfy the Borrower's obligations under the Note, if there is a Default (as defined below).

## 3. COLLATERAL

The collateral of and for this Security Agreement (the "Collateral") is and shall continue to consist of the following, together with all profits and proceeds thereof:

(A) **Cooperative Interest/Pledge Stock.** The Borrower's cooperative interests in the Corporation evidenced or to be evidenced by certificate(s) for the shares of capital stock or membership certificate, as above-referenced (hereinafter referred to as the "Pledged Stock").

(B) **Proprietary Documents.** The Proprietary Documents, occupancy agreement or ownership contract for the Unit appertaining to the Pledge Stock, together with all fixtures, articles of personal property and appurtenances now or hereafter attached to or used in connection with the Unit, and all condemnation and insurance awards there under.

(C) **Distribution.** Any distributions of capital with respect to the Pledged Stock and any securities issued as dividends on the Pledged Stock.

(D) **Additions and Replacements.** All accessions or additions to, substitutions for or replacements of the Collateral.

4. **PROMISES OF THE BORROWER**

Borrower promises and agrees that:

(A) **Performance.** Borrower shall perform each and every promise, covenant and obligation under the Agreement as and when such a performance is due.

(B) **Additional Documents.** Borrower shall do or procure all acts, writings and assurances that the Secured Party may at any time reasonable request to protect or enforce its interests arising from the Agreements and will pay all taxes, charges and fees required to file or record any such writings or instruments.

(C) **Full Payment Due Upon Default.** Borrower shall pay immediately to the Secured Party, without notice, the entire unpaid indebtedness, together with interest, and other charges, if any, which are secured hereby upon the occurrence of an Event of Default under Section 5 hereof.

(D) **Not Permit Default.** Borrower shall not permit the occurrence of any Event of Default (as defined in Section 5) while the Agreements remain in force and effect.

(E) **Subsequent Shares; Redistributions.** If new shares or replacement, substitute or additional shares or redistribution of ownership interests are issued with respect to the Pledged Stock or Unit subject to the Proprietary Documents, then and in any such event the Borrower shall, without notice or demand from the Secured Party, immediately deliver the Certificates evidencing said shares or redistribution of ownership interest to the Secured Party, together with stock powers duly executed in blank covering the same, and said shares or ownership interest shall be held subject to all of the terms, covenants and conditions of this Agreement.

5. **DEFAULTS**

In the event one or more of the following events (referred to in this Security Agreement as "Events of Default") shall occur prior to full payment of the Note, then, at the option of the Secured Party, the Note and the entire unpaid principal balance there under, together with interest and other charges, if any, secured by this Security Agreement, shall become immediately due and payable in full:

(A) **Non-Payment of Note.** Failure to make any payment required under the Note within thirty (30) days after the date the payment becomes due; or

(B) **Non-Compliance with Proprietary Documents.** A default in the payment of maintenance charges and/or any other charges or payments required to be made pursuant to the terms of the Proprietary Documents or a default in performance of and/or breach of any of the terms, covenants and conditions of the Proprietary Documents on the part of the Borrower, which default is not cured within the time and in the manner provided for in the Proprietary Documents, and if no time is so specified, within a reasonable time; or

(C) **Termination of Proprietary Documents.** A notice of termination or cancellation of the Proprietary Documents is given by the Corporation;

(D) **Sublet or Assignment of Proprietary Documents.** The Borrower sublets for more than three (3) years, or offers to sublet for more than three (3) years, or assigns, or offers to assign the Proprietary Documents or the whole or any part of the Unit; or

Security Agreement

(E) **Sale, Transfer or Grant of Security Interest In Stock Or Proprietary Documents.** The Borrower sells, transfers, or assigns or grants a further security interest in the Pledged Stock or the Proprietary Documents; or

(F) **Modify or Cancel Proprietary Documents.** The Borrower attempts, by giving notice or otherwise, to modify, surrender, cancel or exercise any right to terminate the Proprietary Documents; or

(G) **Bankruptcy or Insolvency.** The Borrower becomes insolvent (however such insolvency may be evidenced), commits an act of bankruptcy or makes a general assignment for the benefit of creditors; or any person attempts to enforce a judgment against Borrower or Borrower's property; or an insolvency proceeding under any bankruptcy or insolvency law is instituted against the Borrower and such proceeding is not dismissed or vacated within thirty (30) days after its commencement; or any governmental authority takes possession of or assumes control over any substantial part of the property of the Borrower; or any receiver is appointed of all of a substantial part of the property of the Borrower; or a writ or order of attachment or garnishment is issued or made against any property of the Borrower; or

(H) **Non-Performance Under Security Agreement.** The Borrower fails to perform any promise, covenant, obligation or agreement hereunder; or

(I) **Failure To Sign Additional Documents; Pay Fees.** The Borrower fails to execute and deliver any instrument required by the Secured Party to perfect and protect its security interest in Collateral or to pay any filing or recording fees owing in connection with the perfection of the security interest.

6. In the event of the occurrence of one or more of the Events of Default, and if the Secured Party elects to accelerate the Note and require the entire unpaid principal balance under Note, together with interest and other charges, if any, secured by this Security Agreement to be immediately due and payable in full, each of the following shall apply:

   (A) **Notice.** The Secured Party shall provide the Borrower with written notice in accordance with the terms of the Note by registered or certified mail, return receipt requested, of the election to accelerate the Note, which notice shall also specify the amount being accelerated thereby, including all accrued interest thereon to the dates of such notice.

   (B) **Sale Of Collateral.** If the Borrower shall fail to pay the accelerated indebtedness within thirty (30) days of receipt of said notice (the date of any refusal to accept such notices being deemed as the date of the receipt thereof), then, the Secured Party, in addition to any and all rights and remedies of a secured party under the Uniform Commercial Code then in effect, may, but shall not be obligated to, cause the Pledged Stock to be registered in the Secured Party's name and cause the Corporation to terminate the Proprietary Document and to issue a new Proprietary Documents to the Secured Party or its designee in accordance with the procedures prescribed in the By-Laws of the Corporation, and sell, assign, transfer and deliver the Collateral at public or private sale, for cash, upon credit, or for future delivery and at such price as the Secured Party may deem satisfactory. The sale may be with or without advertisement of the time, place or terms of sale, except that seven(7) days written notice, in manner above provided, shall be given to the Borrower of the time and place of sale, and if the sale be a private sale, the terms of sale shall also be included in such notice. The Secured Party shall not, however, be obligated to make any sale pursuant to any such notice. The Secured Party may, without notice or publication, adjourn the sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale may then be made any time and place to which it may be so adjourned.

   (C) **Sale On Credit Or For Future Delivery.** In the event of any sale on credit or for future delivery, the Collateral sold shall be retained by the Secured Party until the sales price is paid full. The Secured Party shall incur no liability by reason of the purchaser's failure to perform and in the event of any such non-performance, the Collateral may be sold again.

   (D) **Waiver Of Rights.** The Secured Party may be the purchaser at any sale and the Secured Party or any purchaser of the Collateral upon any such sale thereof, shall purchase, take and hold the Collateral free

from any rights of any kind of the Borrower including but not limited to the equity or right of redemption, stay or appraisal, which rights, the Borrower hereby specifically waives and releases.

(E) **Possession.** The Secured Party may take possession of the Unit, sublease the Unit and receive and retain any income under said sublease and apply the same against the Borrower's obligations under the Proprietary Documents and under this Security Agreement. From and after the date that the Secured Party takes possession of the Unit under this Section 6 (E), the Borrower shall be liable to the Secured Party not only for amounts otherwise due the Secured Party by reason of the default under this Security Agreement, but also the difference, if any, between the amount paid by the Secured Party as carrying charges, maintenance charges or any other charges or payments required to be made pursuant to the terms of the Proprietary Document to the Corporation and the amount, if any, received by the Secured Party under any sublease pursuant to this provision.

(F) **Additional Remedies.** The Secured Party may, however, instead of exercising the power of sale confirmed upon it by the Security Agreement, proceed in a suit or suits at law or in equity to foreclose the pledge and sell the Collateral or may proceed by separate lawsuit or proceeding against the Borrower under the Note.

(G) **Costs And Expenses.** In the event of any sale, the Secured Party may first deduct all expenses of collection, sale and delivery of the Collateral sold and any expenses incident thereto, including but not limited to reasonable attorney's fees, brokerage commissions and transfer taxes, and also all sums paid to the Corporation pursuant to the terms of the Proprietary Documents, or any replacement thereof, and may then apply the remainder to any liability of the Borrower under the Note and this Security Agreement, and shall return the surplus, if any, to the Borrower.

(H) **Commercially Reasonable.** Any sale conducted upon the terms of this Section 6 shall be deemed to be commercially reasonable.

(I) **Time Of Sale.** The Borrower agrees that the Secured Party shall have the right to continue to retain the Collateral until such time as the Secured Party, in its reasonable judgment, believes that an advantageous price can be obtained for the Collateral and the Secured Party shall not liable to the Borrower for any loss in the value of the Collateral by reason of any delay in its sale.

(J) **Completion of Documents.** In connection with any sale or disposition of any Collateral, the Secured Party shall have the absolute right to complete the incomplete stock power and assignment for purposes of transferring the Pledged Stock and the Proprietary Documents.

(K) **Insufficient Proceeds.** In any and all events, Borrower acknowledges responsibility for full payment of the indebtedness evidenced by the Note. If the net proceeds of sale are insufficient to satisfy in full said indebtedness, the Secured Party may proceed by separate lawsuit or proceeding against the Borrower for any deficiency.

## 7. ADDITIONAL PROMISES OF THE BORROWER

The Borrower further promises and agrees that:

(A) **Cost of Expenses.** The Borrower agrees to pay the Secured Party, on demand, all costs expended for collection of any payment due under the Note and all costs incurred by the Secured Party in connection with any suit to foreclose a pledge and sell the Collateral, whether or not such a suit shall have proceed to judgment (including reasonable attorney's fees), together with interest on those costs at the rate or rates specified in the Note, and the costs shall be considered to be part of the debt and entitled to the benefits of this Security Agreement.

(B) **Financing Statements.** The Borrower shall execute and deliver a Financing Statement and all renewals of previously filed Financing Statements upon request and hereby authorizes the Secured Party to file the same. If the Borrower refuses to execute and deliver a Financing Statement, the Secured Party shall have the right to execute and file the same on behalf of the Borrower.

(C) **Recording Of Security Agreement; Fees.** The Borrower agrees that this Security Agreement may be recorded at the option of the Secured Party and agrees to pay all filing and recording fees in connection therewith. Any amounts expended by the Secured Party in connection therewith shall be payable by the Borrower on demand, together with interest on those amounts at the rate or rates specified in the Note, and those amounts shall be considered to be part of the debt entitled to the benefits of the Security Agreements.

(D) **Releases And Indemnity.** The Borrower agrees that the Corporation and its officers, agents and attorneys may transfer the Pledged Stock and the Proprietary Documents under this Security Agreement and may also bring a lawsuit or proceeding to evict Borrower from the Unit for failure to perform obligations under this Security Agreement. The Corporation and its officers, agents and attorneys may also refuse any request to transfer the Pledged Stock and the Proprietary Documents if the Secured Party does not consent. Borrower agrees to release and indemnify the Corporation and its officers, agents and attorneys from all liability, expenses and damages which it sustains in the exercise of these rights.

8. **MISCELLANEOUS**

   (A) **Rights Of The Borrower.** Until there has been an Event of Default and the Secured Party has elected to accelerate the indebtedness due under and in connection with the Agreements, the Borrower shall continue to exercise all rights under the Collateral and shall be entitled to all benefits as the owner of the Collateral with the same force and effect if the Borrower has not pledged the stock and assigned the Proprietary Documents to the Secured Party. The Borrower shall be exclusively responsible for the performance of all terms, covenants and conditions of the Proprietary Documents on the part of the lessee to be performed and the Secured Party shall have no responsibility whatsoever thereunder and shall under no circumstances be deemed the lessee of the Unit for any purpose. The Secured Party shall, however, be entitled through the term of this Security Agreement to receive directly all distributions of capital from the Corporation, to be applied in reduction of the indebtedness secured hereby.

   (B) **Possession In Event Of Default.** Upon the occurrence of an Event of Default, the Borrower shall immediately remove itself or themselves from the Unit and give possession thereof to the Secured Party. In the event that a proceeding to evict the Borrower becomes necessary, the cost of the same bill shall be considered to be part of the debt and entitled to the benefits of this Security Agreement.

   (C) **Termination; New Proprietary Documents.** Upon the occurrence of an Event of Default, the Secured Party shall have the right to request that the Corporation terminate the Proprietary Documents and issue new Proprietary Documents to the Secured Party or its nominee.

   (D) **Termination Of Security Agreement.** Upon repayment in full of the entire balance of the indebtedness secured hereby, including interest and other charges, if any, this Security Agreement shall terminate. The Secured Party agrees to transfer and deliver to the Borrower or its designee all of the Collateral then held in pledge hereunder.

   (E) **Assignment.** The Borrower shall not assign this Security Agreement. The Secured Party shall have the right to assign the Note, this Security Agreement and the Collateral, together with all its right, title and interest hereunder and in said Collateral without the Borrower's consent.

   (F) **Remedies Cumulative, No Waiver.** The rights, remedies and benefits specified in this Security Agreement are cumulative and are exclusive of any rights, remedies or benefits which the Secured Party may otherwise have and no delay on the part of the Secured Party in exercising any power or right under this Security Agreement shall operate as a waiver of such power or right as an estoppel assert the same.

   (G) **Waiver Of Rights.** The Borrower hereby waives the rights of presentment and notice of dishonor.

   (H) **Waiver Of Trial By Jury.** Borrower agrees to waive a trial by jury in any lawsuit or proceeding which effects this Security Agreement, except as prohibited by law.

(I) **Governing Law, Severability.** The Agreements shall be constructed and governed by the laws of the Jurisdiction where said Unit is located and, as applicable, those of the United States of America. The Secured Party shall have all rights set forth in this Security Agreement. In the event any clause or provision is constructed or interpreted to be void, invalid or unenforceable, such clause or provision shall be separable from the remaining clauses and provisions and shall not affect the validity or enforceability of the same.

(J) **Terms.** The term "Secured Party" as used in this Security Agreement includes the Secured Party named herein, its successors, and assigns. The term "Borrower" as used in this Security Agreement includes each person who has signed this Note, each person being fully and personally, jointly and severally obligated to keep all the promises made herein. The Secured Party may enforce its rights under this Security Agreement against each Borrower individually or against all of us together.

(K) **Full Understanding.** This Security Agreement contains the full understanding of the parties and may not be amended, altered, discharged or terminated and no provision of this Security Agreement may be waived, modified, or amended except by an agreement in writing signed by the party sought to be charged therewith.

(L) **Captions.** Captions in this Security Agreement are for convenience and shall not be used to interpret or define the terms set forth in this Security Agreement.

This Security Agreement shall be binding on the Borrower and its legal representatives and shall inure for the benefit for the Secured Party and its successors and assigns.

**IN WITNESS WHEREOF,** the Borrower has executed this Security Agreement as of the day and year first above written, and Caliber Home Loans, Inc. has of this 17th day of July, 2020, caused these presents to be signed by _____, its _____, and its corporate seal to be hereto affixed, and has appointed said _____ its true and lawful attorney-in-fact to acknowledge and deliver these presents according to law as of the date and year first above written.

BORROWER:

_/s/ Ashley Nicole Haskett_
Ashley Nicole Haskett

ATTEST:       Caliber Home Loans, Inc.

_____       By: _____

Name: _____       Name: _____

Title: _____       Title: _____

[CORPORATE SEAL]

Security Agreement

District of Columbia  ss.

    This instrument was acknowledged before me this 17th day of July, 2020 by ASHLEY NICOLE HASKETT and _____.

(SEAL)

_____
My commission expires: _____

IAN S. HILL
Notary Public, District of Columbia
My Commission Expires October 31, 2022




Doc #: ▮▮▮▮
07/22/2020 09:36 AM

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
JOYCE A. RHODES, ▮▮▮▮

**B. E-MAIL CONTACT AT FILER (optional)**
joyce.rhodes@edmundjflynn.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Edmund J. Flynn Company
5100 Wisconsin Avenue NW, Suite 514
Washington, DC 20016

[ Print ]   [ Reset ]

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here [ ] and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| HASKETT | ASHLEY | NICOLE | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 208 FARRAGUT STREET NW #F-205 | WASHINGTON | DC / 20011 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b)...

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CALIBER HOME LOANS, INC. | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 3701 REGENT BLVD, STE 200 | IRVING | TX / 75063 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All of the Debtor's right, title and interest in 51 shares of capital stock (the "Shares") of Square 3324 Hampshire Gardens Apartments, Inc. . (the "Corporation") allocated to unit F-205 and parking space(s) N/A in the building addressed 235 Emerson Street NW, Washington DC 20011 and all of the Debtor's right, title and interest in that certain proprietary lease between the Corporation and Debtor(s) as lessee (the "Lease") and any substitute, replacement, and additional shares and any amendments to and extensions or replacements of the Lease; and any and all fixtures (other than house furniture and furnishing) of Debtor now attached to or used in connection with the Apartment. This financing shall be effective until terminated.

The stock certificate and Proprietary Lease are of a corporation formed for the sole purpose of cooperative ownership of real property.

**5.** Check only if applicable and check only one box: Collateral is [ ] held in a Trust (see UCC1Ad, item 17 and Instructions) [ ] being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
[ ] Public-Finance Transaction  [ ] Manufactured-Home Transaction  [ ] A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
[ ] Agricultural Lien  [ ] Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** [ ] Lessee/Lessor  [ ] Consignee/Consignor  [ ] Seller/Buyer  [ ] Bailee/Bailor  [ ] Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
NMLS ID: 15622, LOAN # ▮▮▮▮ , FLYNN CASE # ▮▮▮▮

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

Doc #: █████████
Filed & Recorded
07/22/2020 09:36 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
   RECORDING FEES        $25.00
   SURCHARGE            $6.50
TOTAL:                  $31.50

# Delaware

The First State

Page 1

I, CHARUNI PATIBANDA-SANCHEZ, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF DISSOLUTION OF "CALIBER HOME LOANS, INC.", FILED IN THIS OFFICE ON THE TWENTY-NINTH DAY OF AUGUST, A.D. 2025, AT 2:58 O`CLOCK P.M.



Charuni Patibanda-Sanchez, Secretary of State

SR#

Authentication:
Date: 08-29-25

You may verify this certificate online at corp.delaware.gov/authver.shtml

STATE OF DELAWARE
CERTIFICATE OF DISSOLUTION
(SECTION 275)

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:58 PM 08/29/2025
FILED 02:58 PM 08/29/2025
SR ▓▓▓▓▓▓▓ - File Number ▓▓▓

The corporation organized and existing under the General Corporation Law of the State of Delaware, hereby certifies as follows:

1. The dissolution of Caliber Home Loans, Inc. has been duly authorized by the Board of Directors and Stockholders in accordance with subsections (a) and (b) of Section 275 or by unanimous consent of Stockholders in accordance with subsection (c) of Section 275 of the General Corporation Law of the State of Delaware.

2. The date of filing of the Corporation's original Certificate of Incorporation in Delaware was March 7, 1963.

3. The date of the dissolution was authorized is November 1, 2022.

4. The names and addresses of the directors and officers of the corporation are as follows:

| Name | Title | Address |
|---|---|---|
| Baron Silverstein | Director | 1515 S. Belt Line Rd., Coppell, TX 75019 |
| Nicola Santoro, Jr. | Director | 1515 S. Belt Line Rd., Coppell, TX 75019 |
| Spencer Mosness | Director | 1515 S. Belt Line Rd., Coppell, TX 75019 |
| Spencer Mosness | Secretary | 1515 S. Belt Line Rd., Coppell, TX 75019 |

By: _____
Authorized Officer

Name: <u>Spencer Mosness</u>